## OSIPUK v. OCEANIC STEAM NAV. CO. et al.

District Court, S. D. New York.

May 16, 1932.

Single & Hill, of New York City, for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City, for respondents.

FRANK J. COLEMAN, District Judge.

On March 27, 1928, the libelant, who was a third-class passenger on the steamship Majestic, had a door slam on her fingers causing the partial amputation of one and the deformity of another. Her testimony as to the happening of the accident is uncontradicted, and the principal question in regard to it is whether the condition of the door constituted negligence on the part of the respondent. The door opened outwardly upon the main deck from a lounge room provided for the third-class passengers, and there was no vestibule or other means of protecting it from wind nor had it any check or automatic control to retard its motion in closing. It was on the after side of an island deck house on the forward part of the ship and, while thus somewhat protected against head wind, was free to slam under the influence of other winds or the rolling of the ship.

The libelant, who was a girl of sixteen, in attempting to go from the deck into the lounge room provided for her, had to pull open the door and step over a sill sixteen inches high. In doing so she almost fell and the wind slammed the door while her hand was on its edge at the inside face. The ends of two of her fingers were badly crushed, one of them being partially amputated. She was given first-aid attention by the ship's surgeon, and since they were nearing port she

was on the next day transferred to the hospital at Ellis Island, where the first phalange of the third finger on her right hand was amputated. After frequent surgical treatments covering several months, the result was not only the loss of that segment, but the unsightly deformity of the first phalange of the second finger upon which the nail has been destroyed.

It seems plain to me that it was negligent for the respondent to maintain the door in that condition. It was one commonly used by the passengers, and there must have been great danger of its slamming on them with force enough to injure them. The presence of the high sill made it more difficult for them to protect themselves and the absence of a door check served no marine purpose. Furthermore, it seems to me that there was no contributory negligence on the part of this sixteen year old girl.

█ As to the amount of the damages, the pain must have been excruciating, and while the first-aid treatment may have considerably alleviated it, the pain following the amputation and during the months of treatment must have been quite severe. The permanent loss of function is not very great, but will be some handicap in any manual work throughout the rest of libelant's life. The appearance of the hand has been made very unsightly, and this may well prove a material disadvantage to her in business as well as in her social relations. She is an immigrant of a rather high class and is still attending school at the age of twenty. Under all the circumstances, I believe that $2,250 would be reasonable compensation.

█ Respondent contends that this action is barred by a noncompliance with a clause of libelant's ticket which required a written notice of claim within fifteen days after the termination of the voyage. In the first place, it seems probable from the deposition of Bertha Mascott, which is uncontradicted, that respondent's agent in Detroit did receive such notice within the period. Certainly he was informed of it orally, and I believe the inference is justified that the complaint was reduced to writing and signed by libelant's father. But even if that were not so, the clause in question was not binding on this libelant.

Neither the libelant nor any one representing her ever read, nor could have read, the ticket. The passage had been reserved and paid for by her father, who was in Detroit and who never was shown the ticket nor warned of this provision. He was given a receipt which contained no allusion to it.

The ticket itself was delivered by the American consul at Warsaw to libelant and her seventeen year old brother who was her only companion on the voyage, and was taken from her by the respondent on her embarkation. Neither the libelant nor her young brother could read a word of English, in which the ticket was printed, and the type of that clause, in addition to being almost microscopic, was obscured by some irrelevant handwriting. To hold that those children or their father agreed to a clause which no one of them could within reasonable possibility have known, would be a travesty on justice.

Decree for libelant, with costs.